PENNSYLVANIA INDEPENDENT WASTE HAULERS ASSOCIATION and County of Lycoming

v.

COUNTY OF NORTHUMBERLAND, County of Union, Snyder County Solid Waste Management Authority, County of Columbia, and County of Montour

Appeal of: County of Northumberland, County of Union, County of Columbia, and County of Montour.

Pennsylvania Independent Waste Haulers Association and County of Lycoming

v.

County of Northumberland, County of Union, Snyder County Solid Waste Management Authority, County of Columbia, and County of Montour

Appeal of: Snyder County Solid Waste Management Authority.

Commonwealth Court of Pennsylvania.

Argued Sept. 12, 2005.

Decided Oct. 14, 2005.

Reargument Denied En Banc Dec. 2, 2005.

Robert M. Cravitz, Selinsgrove, for appellant, Snyder County Solid Waste Management Authority.

Stephen P. Chawaga, Philadelphia, for appellee, Pennsylvania Independent Waste Haulers Association.

Garth David Everett, Williamsport, for appellee, Lycoming County.

BEFORE: McGINLEY, Judge, and LEAVITT, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Senior Judge McCLOSKEY.

County of Northumberland, County of Union, Snyder County Solid Waste Management Authority (Snyder), County of Columbia and County of Montour (collectively Appellants) appeal from an order of the Court of Common Pleas of Lycoming County (trial court) which granted the motion for summary judgment of Pennsylvania Independent Waste Haulers Association (Appellee) and denied the motions for summary judgment filed by Appellants.[1]

Appellants entered into separate contracts with Lycoming County relating to

---

1. The Pennsylvania Department of Environmental Protection and the County Commissioners Association have filed an amicus curiae brief in support of the Appellants. The Pennsylvania Waste Industries Association has filed an amicus curiae brief in support of Appellee. Appellee Lycoming County was joined as an involuntary plaintiff, did not participate in argument before the trial court and has filed a notice of non-participation with this Court pursuant to Pa. R.A.P. 908.

the disposal of municipal waste generated in each of their respective counties. Pursuant to the contracts, the waste in each of the counties was to be disposed of at a landfill owned and operated by Lycoming County.[2] Under the terms of the contracts, Lycoming County was to impose a county administrative fee in addition to various disposal and recycling fees. The administrative fee was to be collected from each waste hauler that delivered waste to the landfill from each respective county and the landfill operator was then to remit the fee to Appellants.

Waste haulers that are members of Appellee's Association have been subjected to the administrative fee. Lycoming County was directed by Appellants Northumberland County, Columbia County and Montour County to collect $3.00 per ton for the administrative fee. Union County and Snyder County requested $2.00 per ton. Appellants alleged that this fee was imposed to help fund their recycling programs, which are part of their waste management plans. Appellants alleged that they are authorized to impose a fee. Appellee challenged the payment of this fee by asserting that the levying of fees in the field of solid waste management had been preempted by the state legislature.

The contracts stated that Appellants were adopting and implementing a municipal waste management plan pursuant to the Municipal Waste Planning, Recycling and Waste Reduction Act (Act 101).[3] The contracts further stated that Appellants had entered into the contracts in furtherance of their responsibilities under Act 101.

The trial court determined that municipal powers have been preempted by Act 101, with respect to the funding of recycling programs and that Appellants may only impose an administrative fee if such fee is authorized under Act 101.[4] As the trial court found that Act 101 did not authorize such a fee, summary judgment was granted in favor of Appellee.

Appellants each raise the issue of whether the trial court committed an error of law, or an abuse of discretion, when it held that Act 101 preempts Appellants from imposing a fee to offset the costs of recycling. Appellant Snyder further argues that Appellee did not have standing to bring this action and that Appellant Snyder, as a municipal authority, has broad legislative powers to carry out its purposes and projects.[5]

Summary judgment is appropriate when the record demonstrates that there are no genuine issues of fact to be resolved and the moving party is entitled to judgment as a matter of law. *Dean v. Pennsylvania Department of Transportation*, 561 Pa. 503, 751 A.2d 1130 (2000). Our scope of review of a decision of a trial court is limited to a determination of whether constitutional rights were violated or whether the trial court abused its discretion or committed an error of law. *Gibbs v. Ernst*, 538 Pa. 193, 647 A.2d 882 (1994).

2. Snyder County delegated its waste management authority to Snyder County Solid Waste Management Authority.

3. Act of July 28, 1988, P.L. 556, *as amended*, 53 P.S. §§ 4000.101–4000.1904.

4. In support of their appeal, Appellants cited to a recent trial court determination made by the Lehigh County Court of Common Pleas. In that case, Lehigh County was collecting an administrative fee. The Lehigh trial court determined that Act 101 did not preempt collection of this fee. (Appellants' brief, Exhibit B, Lehigh County Court Opinion).

5. While Appellants have all appealed from the same order of the trial court, Appellant Snyder has filed a separate appeal. The appeals were consolidated for this Court's review.

The Pennsylvania legislature preempted municipal power and responsibility to regulate the transportation, processing, treatment and disposal of solid waste through the Solid Waste Management Act (SWMA),[6] and the the legislature then enacted Act 101 to give counties the responsibility to plan for the processing and disposal of municipal waste generated within their boundaries. *Kasper Brothers, Inc. v. Falls Township,* 672 A.2d 1386 (Pa. Cmwlth.1996), *petition for allowance of appeal denied,* 546 Pa. 649, 683 A.2d 886 (1996). Accordingly, municipal authorities only have the power expressly granted to them through to SWMA and Act 101. *Id.,* at 1389.

In *Municipality of Monroeville v. Chambers Development Corporation,* 88 Pa.Cmwlth. 603, 491 A.2d 307 (1985), the operator of a landfill sought to enjoin enforcement of an ordinance regulating the days and hours the landfill could be open. This Court determined as follows:

> Given the legislature's specific, detailed provision that municipalities may regulate the "storage" and "collection" of solid waste, and the obvious omission of any other permitted areas, we conclude that the legislature did not intend municipalities to have the power to regulate any aspects of the *operation* of a sanitary landfill.

*Id.* at 311. Accordingly we concluded that the ordinance was preempted by the SWMA.

Also, in *Kasper Brothers, Inc.,* we determined that Act 101 only granted the authority to impose a licensing fee on operators of waste hauler vehicles which were *operating* in the county. The ordinance at issue sought to impose a licensing fee on vehicles that merely traveled through the township. The trial court interpreted Act 101 to allow licensing of waster haulers "operating within the boundaries of the municipality," but found that operating within the boundaries did not mean just driving through the municipality, but meant actually conducting activities within the boundaries of the municipality. *Kasper Brothers, Inc.,* 672 A.2d at 1389. We agreed with the trial court and concluded that Act 101 provided neither the county nor the township the authority to impose such an ordinance.

Appellants claim that they may impose their own fee on waste haulers to help fund their recycling programs. In determining whether the legislature intended to preempt counties from developing their own funding for recycling programs outside the scope of Act 101, we need to consider the following:

> Pertinent questions in determining the preemption issues are: (1) Does the ordinance conflict with the state law, either because of conflicting policies or operation effect, that is, does the ordinance forbid what the legislature has permitted? (2) Was the state law intended expressly or impliedly to be exclusive in the field? (3) Does the subject matter reflect a need for uniformity? (4) Is the state scheme so pervasive or comprehensive that it precludes coexistence of municipal regulation? (5) Does the ordinance stand as an obstacle to the accomplishment and execution of the full purposes and objectives of the legislature.

*Duff v. Township of Northampton,* 110 Pa.Cmwlth. 277, 532 A.2d 500, 505 (1987), *affirmed without opinion,* 520 Pa. 79, 550 A.2d 1319 (1988).

Act 101 provides extensive regulation as to waste and recycling. This includes the establishment of "a recycling fee for mu-

---

**6.** Act of July 7, 1980, P.L. 380, *as amended,* 35 P.S. §§ 6018.101–6018.1003.

nicipal waste landfills and resource recovery facilities to provide grants for recycling, planning and related purposes." Section 102(b)(6), 53 P.S. § 4000.102(b)(6). Three full chapters are devoted to the development and implementation of a recycling plan. Chapter 7 of Act 101 requires that municipal recycling programs are to be funded by a $2.00 per ton recycling fee on all solid waste and that the fee is to be paid by the operator of the facility where the waste is disposed. The fee is then to be transmitted to the Commonwealth. *See* Section 701, 53 P.S. § 4000.701.

Chapter 9 of Act 101 establishes the criteria for grants to municipalities for municipal recycling programs. In evaluating the financial aspects of Act 101, the trial court noted as follows:

> In addition to the detailed plan for the implementation and funding of recycling programs, other references in the Act appear to support the conclusion the legislature did not intend for the recycling fee to be supplemented by other, municipality-imposed fees on waste disposal. In its Municipal Waste Management Plan, each county is directed to describe the estimated cost of operating and maintaining a recycling program, estimated revenue from the sale or use of materials and avoided costs of disposal. 53 Pa.C.S. Section 4000.502(e)(1)(x) (emphasis added). Revenue from other sources, such as the administrative fee here, is not contemplated. Indeed, the Act provides in Section 1712 that it shall be an affirmative defense to any action brought against any municipality alleged to be in violation of Section 1501 (which requires the implementation of recycling programs) that such municipality's failure to comply is because the reasonable and necessary costs of operating the program exceed income from the sale or

use of collected material, grant money received and avoided costs of processing or disposal. 53 Pa.C.S. Section 4000.1712. Moreover, apparently recognizing that the funding scheme originally provided for by the Act might not be enough to accomplish their purpose, in 2002 the legislature added Section 1513, which requires DER to develop a plan to assist municipalities in making recycling programs financially self-sufficient. Specifically the plan is to include a market development program (to be funded by the recycling fund), address the extent to which municipal recycling programs can be sustained by restructuring the allocation of available recycling grants, include recommendations to county recycling coordinators designed to encourage market development, and identify the specific means, including legislative changes, that DER intends to use to assist municipalities in making their recycling programs self-sufficient. 53 Pa.C.S. Section 4000.1513. The implication is, of course, that no funds other than those provided for by the Act are contemplated.

(Appellant's brief, trial court opinion at 6–7).[7]

Act 101 provides a comprehensive recycling plan that provides a specified funding source and does not provide any authority to raise revenue by other means. If counties are permitted to add to the existing regulations the inconsistent rules would preclude coexistence with the existing regulations. The trial court found that an "examination of Act 101 reveals a plan for recycling programs set out with such detail that the Court cannot help but find 'an intention on the part of the legislature that it should not be supplemented by munici-

---

7. DER references the Department of Environmental Resources.

pal bodies.'" (Appellant's brief, trial court opinion at 4). We agree with this determination and, thus, conclude that the trial court did not abuse its discretion or make an error of law in reaching its conclusion.

■ As municipal powers are preempted by Act 101 with respect to recycling programs, Appellants may only impose the administrative fee if it is expressly authorized by the Act. Act 101 provides no such authority. Accordingly, the order of the trial court is affirmed as to this issue.

■ Appellant Snyder also raises the claim that Appellee's action should be dismissed because Appellee lacks standing in this matter. Appellant Snyder alleges that Appellee failed to establish evidence that it, or any of its members, ever paid the administrative fee in question.

■ Appellee disputes this claim and notes that the record contains evidence that its members have sent letters to Lycoming County complaining about the fee and requesting that the fee be kept in escrow. (R.R. 763a–766a). Other letters received into evidence were by members refusing to pay the fee or paying under protest. (R.R. at 767–68). Furthermore, Appellee is an association derived of waste haulers. An association may bring a cause of action where its members are suffering immediate harm or threatened injury as a result of a regulation. *National Solid Wastes Management Association v. Casey*, 135 Pa.Cmwlth. 134, 580 A.2d 893 (1990). Accordingly, we conclude that the trial court did not err in finding that Appellee established standing in this action.

■ Appellant Snyder's final argument is that, because it is a municipal authority as opposed to a county, it has broad legislative powers to carry out its purposes and projects. We disagree. In the instant action, the County of Snyder has delegated its waste management powers to Appellant Snyder. It is well-established that a municipal authority, as an appointed body, cannot be delegated any powers of raising revenue. *Evans v. West Norriton Township Municipal Authority*, 370 Pa. 150, 87 A.2d 474 (1952).

■ Regarding its own purposes and powers, a municipality, as an agent of the state, cannot act contrary to the state. *Duff v. Township of Northampton*, 110 Pa.Cmwlth. 277, 532 A.2d 500 (1987), *affirmed without opinion*, 520 Pa. 79, 550 A.2d 1319 (1988). As such, Appellant Snyder, as a municipal authority, is subject to the doctrine of pre-emption. *Duff*, 532 A.2d at 504–05.

As we have determined that Act 101 provides a comprehensive recycling plan that the legislature did not intend to be supplemented by municipal bodies, the doctrine of pre-emption is applicable in this action. Thus, our determination applies as equally to Appellant Snyder, a municipal authority, as it does to the Appellants that are counties.

Accordingly, the order of the trial court is affirmed.

## *ORDER*

AND NOW, this 14th day of October, 2005, the order of the Court of Common Pleas of Lycoming County is affirmed.